Filed 11/15/23  In re A.M. CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
DIVISION FOUR

| | |
|---|---|
| In re A.M., a Person Coming Under the Juvenile Court Law. | B325354 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> I.M., <br><br> Defendant and Appellant. | Los Angeles County Super. Ct. No. 17CCJP01728 |
| In C.M. et al., Persons Coming Under the Juvenile Court Law. | B325364 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> I.M., <br><br> Defendant and Appellant. | Los Angeles County Super. Ct. No. DK19774 |

APPEAL from an order of the Superior Court of Los Angeles County, Kristen Byrdsong, Judge Pro Tempore. Affirmed.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

## INTRODUCTION

This appeal arises out of the dependency proceedings relating to 13-year-old C.M., 10-year-old Ja.F., 9-year-old Jo.F., and 6-year-old A.M., the children of I.M. (mother).[1] Mother challenges the order denying her petition filed under Welfare and Institutions Code[2] section 388, by which she sought to terminate the legal guardianship established over the children and have them returned to her care.

The parties are familiar with the facts and procedural history of the case, so we do not fully restate those details here. Instead, in the Discussion, *post*, we discuss the facts as needed to provide context for and resolve the issues presented on appeal. For the reasons discussed below, we affirm.

_____

1    Mother has two other children, 12-year-old A.F. and 5-year-old J.M., both of whom are in her care and are not at issue in this appeal. C.M.'s father is L.M. and his whereabouts are unknown. M.F. is the father of mother's other children. L.M. and M.F. are not parties to this appeal.

2    All undesignated statutory references are to the Welfare and Institutions Code.

2

## DISCUSSION

### I.    Relevant Background

C.M., Ja.F., and Jo.F. have been dependents of the court since December 2016. Subsequently, in February 2018, A.M. was also declared a dependent of the court, and the children were removed from their parents. The children have resided with their current caregivers since 2018 and have had unmonitored overnight visits with their parents on weekends since November 2018.

Near the end of their 18-month reunification period, in July 2019, the parents told the Department of Children and Family Services (Department) that, although they had been participating in services and had secured stable housing, "they did not feel ready to reunify with the children" due to the children's special needs and necessary services. Specifically, the parents noted: (1) they needed more time to learn how to manage/address the behavioral issues of their older son, A.F., who was in their care and receiving wraparound services; (2) Jo.F. was also receiving wraparound services and having behavioral issues in their home during visits; and (3) C.M., Ja.F., and A.M. were clients of the Regional Center at the time and each received different services several times per week. Consequently, in September 2019, the juvenile court terminated the parents' reunification services.

At the section 366.26 hearing held in February 2021, the juvenile court granted legal guardianship of the children to their caregivers. It also ordered the parents' unmonitored visits to continue.

In September 2022, mother filed a petition under section 388 seeking to modify the order establishing the caregivers' legal guardianship over the children. She asked the juvenile court to

3

return the children to her care or, alternatively, reinstate her reunification services and extend her weekend overnight visits by one day. Following a hearing, the court denied mother's petition, finding she failed to demonstrate a change in circumstances, or that the requested modification to its order was in the children's best interests.

## II.   Governing Principles and Standard of Review

"Section 388 accords a parent the right to petition the juvenile court for modification of any of its orders based upon changed circumstances or new evidence." (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478, fn. omitted.) "The [parent] has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child." (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615, original italics.) "In considering whether the [parent] has made the requisite showing, the juvenile court may consider the entire factual and procedural history of the case." (*Id.* at p. 616.)

"We review the juvenile court's denial of a section 388 petition for an abuse of discretion." (*In re Mickel O., supra,* 197 Cal.App.4th at p. 616.) "'["]The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.["]'" (*Ibid.*)

## III.   Analysis

Mother contends the juvenile court abused its discretion by denying her section 388 petition because she satisfied both prongs of the two-pronged test discussed above. With respect to the first prong, mother asserts she "proved that her

4

circumstances had changed substantially" because the record shows she completed all the classes/programs set forth in her court-ordered case plan, has secured "a stable home for the children," and "was able to work with [the children's] service providers." For the reasons discussed below, we do not agree with mother's argument.

As noted above, mother seeks to modify the February 2021 order placing the children with their caregivers under a permanent plan of legal guardianship. Although mother correctly observes she has completed all of the classes/programs required of her and secured adequate housing, the record—including the evidence offered in support of her section 388 petition—shows she reached those milestones before her reunification services were terminated in September 2019. Indeed, when it terminated her reunification services, the juvenile court acknowledged mother's substantial compliance with her case plan. Consequently, while commendable, mother's compliance with her court-ordered case plan and her stable housing situation do not establish her circumstances have changed since entry of the order she seeks to modify.

Next, mother's evidence in support of her section 388 petition does not—as she appears to suggest—demonstrate she has addressed the barriers precluding reunification in 2019. Attached to the petition was a declaration by mother, in which she acknowledged she previously "did not feel mentally prepared to have [all the children] together" in her care because she "was working with [her] son [A.F.] . . . who has anger problems." Mother then states she has made "progress i[n] situating [A.F.] at . . . [her] home," that she "ha[s] been preparing day by day to be able to deal with the tantrums of each child," and that she has

5

been "practicing what [she] learn[ed] from [Jo.F.'s wraparound services providers] . . . and will put everything into practice with all [her] children." These vague statements, however, do not illustrate what progress, if any, mother has made in managing A.F.'s behavioral challenges. Nor does mother clearly explain how or why she is now prepared to address all of her children's behavioral issues and/or other special needs. Although mother suggests she has learned certain skills or techniques while participating in wraparound services with Jo.F., she does not describe what they are or explain how they will assist her in managing the children's behaviors or meeting their needs. Moreover, contrary to mother's statements in her declaration, the children's caregivers told the Department that the parents "'have not worked with [A.F.] and his [problematic] behaviors continue.'"

Finally, as discussed below, the record shows mother has consistently struggled to manage the children's behaviors during her unmonitored visits, and that those challenges persisted up until she filed her section 388 petition in September 2022.

Throughout the reunification period and beyond, up through 2021, the children's caregivers reported that, during weekend visits, mother regularly, and frequently, called them for assistance in calming the children over the phone. The caregivers also related the children often misbehaved in their parents' home and that, on multiple occasions, the caregivers had to pick up one or all of the children early from visits when the parents were unable to control them or manage their tantrums. Further, the caregivers stated the children behaved differently with their parents, as they followed the rules and were calm in the caregivers' home.

In 2022, the parents continued to communicate with the caregivers about the children's behaviors and sought their support as needed during visits. At some point that year, Jo.F. had two tantrums in one month at his parents' home. During one of those tantrums, Jo.F. hit mother with a belt, leading her to call the police. Upon learning of the incident, the children's caregiver went to mother's home, helped Jo.F. calm down by using breathing exercises and discussing the potential consequences of his actions, and took him home.

Another incident occurred in August 2022, a month before mother filed her section 388 petition. C.M. reported that, during J.M.'s birthday party, A.F. became upset for unknown reasons and began yelling, cursing, and hitting mother. C.M. then intervened and tried to stop A.F. from hitting mother. At that point, A.F. "punched [C.M.] on the right side of her head by her ear, dropping her to the floor." Soon thereafter, father returned home from work and separated A.F. from his siblings. Mother called the children's caregiver and asked her to pick them up. Thereafter, the caregiver took C.M. to the hospital because she reported having pain to her head. While C.M. did not have any bruises or serious injuries, she was given medication to help her relax.

For the reasons discussed above, we conclude the juvenile court did not "exceed[ ] the bounds of reason" (*In re Mickel O.*, *supra*, 197 Cal.App.4th at p. 616) by finding mother failed to demonstrate a change in circumstances of "'such significant nature that it requires a setting aside or modification of the challenged prior order.'" (*Ibid.*) The juvenile court therefore did not abuse its discretion by denying mother's section 388 petition. Having reached this conclusion, we need not address whether the

7

court erred by finding the requested modification to its February 2021 order was not in the children's best interests. (See *ibid.* ["The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child." (Original italics.)].)

## DISPOSITION

The order denying mother's section 388 petition is affirmed.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

CURREY, P. J.

We concur:

MORI, J.

ZUKIN, J.