Filed 10/30/24  In re R.C. CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re R.C., A Person Coming Under the Juvenile Court Law. | B334810, B336370 |
| _____ | (Los Angeles County Super. Ct. No. 21CCJP05373A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| R.C., | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Charles Q. Clay, III, Judge.  Conditionally reversed and remanded with directions.

Gina Zaragoza, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Senior Deputy County Counsel, for Plaintiff and Respondent.

R.C. (Mother) is the mother of Ro.C. (Minor), who was just over a year old when the juvenile court found her to be a dependent child based on Mother's no contest plea to allegations arising from a history of mental and emotional problems. In this consolidated appeal, we consider whether, later in the dependency proceedings, the juvenile court erred by declining to find changed circumstances justifying resumption of reunification services, by ruling the parental benefit exception to statutory provisions governing the termination of parental rights did not apply, and by finding the Los Angeles County Department of Children and Family Services (the Department) complied with its obligations under the Indian Child Welfare Act (ICWA) and related California law.[1]

## I. BACKGROUND

### A. The Department's Initial Investigation and Detention

The Department began investigating Minor's welfare in November 2021. In an interview with a social worker, Mother presented with a "flat affect" but denied she suffered from any mental health issues and denied Minor was being neglected. Asked about her living arrangements, Mother advised she was "couch surfing at friend[s'] homes." When the social worker attempted to speak with Mother regarding obtaining a medical assessment of Minor and establishing a safety plan (Minor

---

[1] Minor's father, whose parental rights were also terminated by the juvenile court, was never identified during the dependency proceedings and, accordingly, is not a party to this appeal.

appeared malnourished and underweight for her age), Mother hurriedly left the interview.[2]

The social worker spoke with two maternal cousins, S.M. and B.B., and a maternal aunt J.T. Two of the relatives reported Minor's father was the maternal grandfather and that he had been sexually abusing Mother for years. Those same two relatives also expressed reservations about Mother's mental health. All three, however, asserted they did not have any concerns about Minor or Mother's ability to care for the child.

The Department filed a dependency petition alleging Minor was at substantial risk of suffering serious physical harm. Department reports filed in connection with the hearing indicated Mother previously lost her parental rights to two older children due to substantiated allegations of general neglect. In that earlier dependency proceeding, the court determined ICWA was inapplicable to Minor's siblings; on that basis, the Department stated ICWA "does not apply" to Minor.

Two maternal relatives were present at the initial detention hearing on the petition: the maternal aunt J.T. and a maternal uncle W.B. The court addressed both relatives during the hearing but did not inquire about whether Minor may be an Indian child. The court ordered Minor detained from Mother and issued a protective custody warrant for Minor and an arrest warrant for Mother. Those warrants were recalled after Mother and Minor were located two months later.

In February 2022, Mother was arraigned and denied the petition's allegations. In addition, she disclaimed orally and in

---

[2] Ten days later, the Department filed a missing person's report for Mother and Minor.

writing any Indian heritage, and the juvenile court found "this case is not governed by [ICWA]."

### B. *Jurisdiction and Disposition*

The Department re-interviewed Mother before the jurisdiction hearing. She reported she was still transient and living with relatives. Although she continued to deny any mental illness or condition, the Department investigator observed Mother presented with "comprehension challenges": she "did not show a consistent capacity to understand questions" and was "often off-topic and required refocusing."

Maternal relatives also voiced concerns about Mother's mental health. For example, maternal cousin B.B., with whom Minor had been placed, reported Mother had "comprehension/cognitive deficits" that implicated her ability to meet Minor's needs. To illustrate, B.B. described Mother's attempt at Minor's first birthday party to force feed formula to her daughter even though Minor had progressed to eating solid food. Other relatives, including maternal aunt B.H., related similar concerns about Mother's ability to provide for Minor's daily needs.

The Department subsequently filed an amended dependency petition adding an additional count alleging a substantial risk of serious physical harm (Welf. & Inst. Code,[3] § 300, subd. (b)(1)) and another count alleging Minor was at substantial risk of abuse in connection with abuse of a sibling (§ 300, subd. (j)). Both newly alleged counts alleged Minor was at

---

[3]     Undesignated statutory references that follow are to the Welfare and Institutions Code.

4

risk in light of Mother's history of mental and emotional problems or her cognitive and developmental deficits; the counts additionally alleged Minor's two older siblings had received permanent placement services due to Mother's mental health issues.

At a hearing in May 2022, Mother pled no contest to the newly added counts (as amended by interlineation). The court ordered monitored visitation and reunification services for Mother. In addition, the court ordered Mother to complete a developmentally appropriate parenting program, undergo an Evidence Code section 730 psychological evaluation, and obtain additional mental health services if recommended by the psychological evaluator.

### C. Termination of Reunification Services

In advance of the six-month status review hearing, the Department reported Mother had completed a ten-week, on-line parenting program. The program's administrator observed that although Mother completed the program, she had "challenges completing the workbook and understanding the material." The administrator also told a Department social worker that "there is something off" with Mother and opined she may have a "learning disability."

The Department also reported Mother underwent the court-ordered psychological evaluation. The evaluator expressed "significant concerns regarding [Mother's] psychological and emotional function" and opined it was "likely that [Mother's] potential cognitive delays interfere with parenting capacity, and without services would present a continued risk of harm to her children." The evaluator recommended several services for

Mother and opined that "without ongoing services and supports, the family is at substantial risk of recidivism." Following the Evidence Code section 730 evaluation, the Department provided a mental health referral to Mother, but Mother did not act on that referral.[4]

The Department also reported on Mother's visitation, which was consistent and revealed the existence of some bond between Mother and Minor. Minor's caregiver, maternal cousin B.B., related Minor cried and was "very clingy" following in-person visits with Mother. At the same time, B.B. reported Minor's emotional reaction to Mother's departure dissipated quickly after being soothed. The Department indicated Minor was "happy, healthy and well-bonded" to B.B., who ensured the child attended all medical appointments and was meeting age-appropriate developmental milestones. On balance, the Department found Mother to be in "partial compliance" with her case plan and working toward meeting the plan's goals. The Department accordingly recommended continuation of reunification services.

At the six-month status review hearing, held in November 2022, the juvenile court found Mother's progress with her case plan had "not been substantial." Because there was a substantial probability Minor might be returned to Mother within the next six months, however, the court ordered the Department to continue providing reunification services to Mother.

---

[4] Mother had enrolled in mental health services before her Evidence Code section 730 evaluation, but she stopped receiving those services after two months.

As of March 2023, the Department reported Mother had not shown "consistency in following through in receiving services." Mother remained homeless despite receiving multiple housing referrals and, despite receiving numerous referrals for mental health services, had not provided any proof of enrollment in such services. A visitation monitor reported Mother was attentive only "sometimes" and had to be "reminded to complete simple tasks such as changing [Minor's] diaper, . . . pick[ing food] up off the floor, [and] not allowing [Minor] to put toxic items in her mouth . . . . [M]other appears to be there just to visit and does not know the basics of child supervision." The Department opined Mother did "not appear able to provide for [Minor's] basic needs[,] including food, water and shelter. Mother does not appear able to properly care for [Minor] and has not fully addressed the issues that brought her to the attention of [the Department]." The Department further advised that Minor appeared "comfortable" in the presence of B.B, with whom she appeared to share a "close bond." B.B. wanted to adopt Minor, and the Department recommended termination of reunification services.

At the 12-month review hearing, held that same month, the juvenile court terminated family reunification services for Mother, finding "the extent of progress made toward alleviating and mitigating the causes necessitating placement has not been substantial."

D.   *Mother's Changed Circumstances Petition and Termination of Parental Rights*

In June 2023, in advance of a scheduled section 366.26 selection and implementation hearing, the Department reported

Minor's caregiver B.B. had provided her with a "great level of care," observed that Minor and B.B. shared "a loving and genuine bond with one another," and related B.B. was "committed to providing a forever home" to Minor. The Department also reported Mother was having weekly visits with Minor. Although Mother was engaged "at times" with Minor during her visits, she "had to be reminded of certain tasks[,] such as changing the child's diaper or feeding the child." The Department also recorded that it had asked Mother and B.B. if they had any Native American ancestry and related that both parties stated they had no new information and that there had been no mention of such ancestry from any family members.

Three months later, in September 2023, the Department reported Mother's visits with Minor "remain[ed] the same": although Mother interacted in a "positive" manner with her daughter, she "still ha[d] to be reminded to complete simple tasks such as washing her hands after changing the child's diaper," "allow[ed] the child to touch things she should not be touching," and did "not pay attention to the child when she beg[an] to climb on things that c[ould] easily fall on her." The Department also reported Minor remained "happy, healthy and well-bonded" to B.B, who, in the Department's view, was a strong advocate for Minor's needs and served as a parental figure for Minor. The Department recommended the termination of parental rights.

Later in September, Mother filed a section 388 petition asserting there had been a change of circumstances justifying resumption of reunification services. Mother argued she recently completed a parenting course and, in recognition of how her mental health affected her and Minor, had taken courses to improve her mental well-being. Mother argued reinstatement of

reunification services, or a return of Minor to her care, would serve Minor's best interests because she and her daughter were bonded as a result of Mother's consistent visitation and Minor's emotional reactions at the conclusion of in-person visits.[5]

The Department opposed Mother's change of circumstances petition. The Department commended Mother for completing an online parenting course for a second time but observed she continued to struggle with comprehending the course material. In addition, the Department reported the course's administrator stated she "would not feel comfortable allowing [Minor] to return to [Mother's] care without a suitable family member assisting around the clock with Mother and child." The Department additionally opined Mother had not successfully addressed her mental health issues because her recent enrollment in mental health services did not establish participation in a sustained manner.

The juvenile court held a hearing to consider permanency planning for Minor and Mother's section 388 petition in November 2023. The court denied the section 388 petition, finding that there was evidence circumstances were chang*ing* or "amenable to change," but no evidence of chang*ed* circumstances nor evidence resuming reunification services would be in Minor's best interests. Proceeding to permanency planning, the court terminated parental rights, finding the parental benefit exception to termination inapplicable. The court agreed "Mother has

---

[5] With her request, Mother submitted documentation verifying her completion of the same on-line parenting course she previously completed and a recent application for a psychological evaluation and therapy services.

9

maintained regular visitation with [Minor] and has established a bond" but found "any benefit that may accrue to [Minor] from her continued relationship with Mother is outweighed by the physical and emotional benefit that [she] will receive through the permanency and stability of adoption . . . ."

## II.  DISCUSSION

The juvenile court's denial of Mother's changed circumstances petition was not an abuse of discretion.  Even assuming for argument's sake that Mother showed changed rather than changing circumstances, Mother did not establish reinstating reunification services was in Minor's best interest. The record showed Mother's ability to care for and protect Minor had not improved with time—likely because, during the two years of dependency jurisdiction preceding the termination of parental rights, Mother did not diligently seek or receive on a sustained basis any mental health services.

The juvenile court also acted within its discretion when deciding the parental benefit exception does not apply for the reason it gave.  When balanced against the demonstrated benefits of the prospective adoptive home, the juvenile court did not exceed the bounds of reason by finding that severing Mother's relationship with Minor would not be detrimental.  Minor had spent approximately two-thirds of her life in the care of B.B., to whom she was closely bonded and regarded as a parental figure. In contrast to Mother, B.B. had demonstrated an ability to provide a "great" level of care for Minor.

Mother's final contention, that the juvenile court's ICWA-related finding is infirm, has merit.  The Department concedes no ICWA-related inquiry was made of maternal aunt J.T. or

10

maternal uncle W.B., both of whom were both present at the initial detention hearing.  As we shall explain, this failure to make inquiry of a detention hearing participant requires conditional reversal of the parental rights termination order to permit the inquiry that was not undertaken.

> A.  *The Juvenile Court Did Not Abuse Its Discretion in Denying Mother's Section 388 Petition*

Section 388 "accords a parent the right to petition the juvenile court for modification of any of its orders based upon changed circumstances or new evidence.  [Citations.]  To obtain the requested modification, the parent must demonstrate both a change of circumstances or new evidence, and that the proposed change is in the best interests of the child.  [Citations.]" (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.)  Where, as here, reunification services have been terminated, "the parents' interest in the care, custody and companionship of the child are no longer paramount" and a court considering the child's best interest in the context of a section 388 petition "must recognize this shift of focus . . . ." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317; accord *Alayah J.*, *supra*, at 478; *In re K.L.* (2016) 248 Cal.App.4th 52, 62.)  Our review is for abuse of discretion.  (*In re N.F.* (2021) 68 Cal.App.5th 112, 120.)

The only argument Mother presents on appeal to contend the trial court erred in finding an insufficient change of circumstances is an argument that was not raised below.  The point is accordingly forfeited, and we decline to exercise our discretion to address it.  (See, e.g., *In re S.B.* (2004) 32 Cal.4th 1287, 1293; *In re N.O.* (2019) 31 Cal.App.5th 899, 935.)  Even assuming a sufficient change of circumstances showing was

11

made, however, the juvenile court's order still was not an abuse of discretion because there was an insufficient showing that resuming reunification services would be in R.C.'s best interest.

Mother's cited progress in addressing her skills as a parent was, at best, uncertain. Over the course of two years, Mother managed only to take one online parenting course twice and, despite repeating the course, the record showed she gained little insight into her responsibilities as a parent. Particularly telling was the parenting course administrator's statement, after Mother's second time participating in the course, that Mother should not be allowed to care for Minor unless she had the full-time assistance of another family member.

Visitation monitors also regularly reported Mother had difficulty caring for Minor in the most basic respects, such as attending to Minor's need to have her diaper changed and protecting her from obvious hazards. Mother also did not take advantage of multiple referrals for mental health services. The evidence Mother submitted in support of her change of circumstances petition revealed, at most, that she had taken preliminary steps to receiving therapy services and had done so not long before filing the petition.

There was evidence the juvenile court credited to find Minor had some bond with Mother, but there is also solid evidence in the record that Minor was happy, healthy, and well-bonded with her caregiver B.B., with whom she had lived for two years and regarded as a parental figure.

On all these facts, the juvenile court did not abuse its discretion in finding additional reunification services would not be in Minor's best interest. (See, e.g., *In re Amber M.* (2002) 103 Cal.App.4th 681, 686-687 [affirming denial of mother's section

388 petition where her children had been out of her care for two years and were attached to their caregivers].)

### B. The Juvenile Court Did Not Err in Terminating Mother's Parental Rights

When a parent is unable to remedy issues that led to dependency jurisdiction, the juvenile court holds a hearing under section 366.26 to determine "whether to terminate parental rights, making way for adoption, or to maintain parental rights and select another permanent plan." (*In re Caden C.* (2021) 11 Cal.5th 614, 625.) A "parent may avoid termination of parental rights by establishing at least one of a series of enumerated exceptions." (*Ibid*.) One of these exceptions, set forth at section 366.26, subdivision (c)(1)(B)(i), is the parental benefit exception. The exception is "limited in scope" and applies where "'[t]he court finds a compelling reason for determining that termination would be detrimental to the child due to one or more of the following circumstances: [¶] (i) The parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship.' (§ 366.26, subd. (c)(1)(B)(i).) From th[is] statute, [our Supreme Court] readily discern[ed] three elements the parent must prove to establish the exception: (1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." (*Caden C.*, *supra*, 11 Cal.5th at 631.) Only the third element is contested in this appeal.

Analyzing whether terminating a parental relationship would be detrimental to a child requires the juvenile court to determine "whether the harm of severing the relationship

13

outweighs 'the security and the sense of belonging a new family would confer.' [Citation.] 'If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that,' even considering the benefits of a new adoptive home, termination would 'harm[ ]' the child, the court should not terminate parental rights. [Citation.]" (*Caden C.*, *supra*, 11 Cal.5th at 633, citing *In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.) Relevant factual determinations include "the specific features of the child's relationship with the parent and the harm that would come from losing those specific features," "how harmful in total that loss would be," and "for the particular child, how a prospective adoptive placement may offset and even counterbalance those harms." (*Caden C.*, *supra*, at 640.)

A reviewing court uses the substantial evidence standard of review to assess factual determinations underpinning a detriment finding, "ranging from specific benefits related to the child's specific characteristics up to a higher-level conclusion about the benefit of adoption all told." (*Caden C.*, *supra*, 11 Cal.5th at 640.) But "the ultimate decision—whether termination of parental rights would be detrimental to the child due to the child's relationship with his parent—is discretionary and properly reviewed for abuse of discretion." (*Ibid*.)

Here, the juvenile court did not abuse its discretion in determining that any harm that may result from terminating Mother's parental rights would be outweighed by the security and stability Minor found living with her maternal cousin B.B. Minor, who was almost three years old at the time parental rights were terminated, was healthy, happy, and closely bonded with B.B., with whom she had lived for approximately two

years—or almost twice as long as she had lived with Mother. Although Mother was found to be consistent in her visitation and the visits were enjoyed by both parties, the visits lasted only for a couple of hours each week and Minor did not appear to suffer from sustained separation anxiety or other emotional trauma when the visits ended; to the contrary, after being soothed by B.B. following Mother's departure, Minor resumed playing with no other ill effects being reported. In view of the "great" level of care B.B. provided to Minor over the course of nearly two years, the juvenile court's determination that terminating parental rights to enable B.B.'s adoption of Minor was not an abuse of discretion. (See, e.g., *In re A.L.* (2022) 73 Cal.App.5th 1131, 1161-1162.)

> ### C. Remand Is Required Because the Juvenile Court Did Not Make ICWA Inquiry of Detention Hearing Participants

Federal regulations implementing ICWA require state courts "at the commencement of the proceeding" to ask "each participant" in child custody proceedings whether they know or have reason to know that the child is an Indian child and to instruct the participants to inform the court if they subsequently receive information that provides reason to know the child is an Indian child. (25 C.F.R. § 23.107(a).) California law similarly provides that "the court shall ask each party to the proceeding and all other interested persons present whether the child is, or may be, an Indian child" and "instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is, or may be, an Indian child." (§ 224.2, subd. (c).)

15

Mother argues the juvenile court erred by not making ICWA-related inquiry of (among others) maternal aunt J.T. and maternal uncle W.B., both of whom were present at the detention hearing. We agree it was error under Federal and State law for the juvenile court not to make ICWA inquiry of maternal aunt J.T. and maternal uncle W.B. (25 C.F.R. § 23.107(a); § 224.2, subd. (c).) We shall accordingly conditionally remand the cause with directions to correct the error.[6] (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1124 ["We therefore hold that an inadequate Cal-ICWA inquiry requires conditional reversal of the juvenile court's order terminating parental rights with directions to the agency to conduct an adequate inquiry, supported by record documentation"].)

## DISPOSITION

The order terminating parental rights is conditionally reversed and the cause is remanded solely for further proceedings required by this opinion. The juvenile court is directed to reappoint counsel for Mother and either (a) hold a hearing to

---

[6] The Department concedes a remand is required solely for "compliance with the ICWA's initial inquiry provisions" and states that upon remand it "should make ICWA inquiry of (1) maternal aunt J.T.; (2) maternal uncle W.B.; (3) maternal aunt [B.]H.; and (4) maternal cousin [S.]M. . . . ." Our disposition will not mandate inquiry co-extensive with the Department's concession, instead leaving what should be required to the juvenile court's determination in the first instance. Obviously, however, nothing precludes the Department from voluntarily undertaking the precise inquiry it now concedes it should have undertaken.

permit the court itself to question maternal aunt J.T. and maternal uncle W.B. about whether either has reason to know Minor is an Indian child, or (b) direct the Department to question maternal aunt J.T. and maternal uncle W.B. about whether there is reason to know Minor is an Indian child and to thereafter submit a report to the court documenting the relatives' responses. Nothing in our disposition precludes the juvenile court from ordering additional ICWA-related inquiry, including of maternal aunt B.H. and maternal cousin S.M., if the court deems it advisable.

If additional inquiry results in information indicating there is reason to know Minor is an Indian child, the juvenile court shall proceed in accordance with ICWA and related California law. If additional inquiry does not result in information indicating there is reason to know Minor is an Indian child, the court's order terminating parental rights shall be reinstated.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, Acting P. J.

We concur:



MOOR, J.



KIM, J.


17