Filed 3/8/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re ALAYAH J., et al., Persons Coming Under the Juvenile Court Law. | B275728 |
| | (Los Angeles County |
| | Super. Ct. No. DK05617) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent. | |
| v. | |
| NIEMA B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  D. Zeke Zeidler, Judge.  Affirmed.

Lori N. Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Assistant County Counsel, and Stephanie Jo Reagan, Deputy County Counsel for Plaintiff and Respondent.

Appellant Niema B. (mother) appeals from the juvenile court's order terminating parental rights over her children Alayah J. (born Sept. 2010), Curley B. (born Oct. 2012), and Christopher B. (born Dec. 2014). Mother contends the order must be reversed because the juvenile court erred by initially granting her a hearing on her Welfare and Institutions Code section 388[1] petition seeking unmonitored visits and an assessment of her home for overnight visits and placement of the children, and then subsequently denying her such a hearing, and by terminating her parental rights before considering her section 388 petition.

We agree that the juvenile court erred by terminating mother's parental rights without first considering her section 388 petition. We conclude that no miscarriage of justice occurred, however, as a result of that error and therefore affirm the order terminating mother's parental rights.

## BACKGROUND

**Detention and section 300 petition as to Alayah J. and Curley B.**

In March 2013, the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging that Alayah J. and Curley B. were victims of general neglect and that their parents were abusing drugs. Mother told the responding social worker that she had been diagnosed with mild mental retardation and that she receives Social Security benefits because of her disability. She tested positive for marijuana in an on demand drug test. Curley's B. father, Curley B. Sr. (Curley Sr.),[2] told the social worker that he was diagnosed with paranoid schizophrenia and though he does

---

[1]     All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]     Curley Sr. is not a party to this appeal.

not receive psychiatric services, he uses marijuana to manage his mental health problems. Both parents declined voluntary services.

In July 2013, the Department received another referral alleging that Alayah J. was a victim of emotional and physical abuse by her father, David J.[3], who arrived at the children's home and said he was taking Alayah J. with him. An altercation with mother ensued, but David J. left before law enforcement arrived at the scene. Mother filed a police report alleging that David J. had punched both her and Alayah J. in the face. Mother stated she was a victim of domestic violence from David J. and that she has a restraining order against him.

In September 2013, the Department received another referral alleging that Curley Sr. was arrested following an incident of domestic violence with mother. The report alleged that mother and Curley Sr. argued and slapped each other in the presence of the children and that Curley Sr. was arrested when the altercation continued onto the street.

In February 2014, the Department again met with mother and Curley Sr. in an effort to persuade them to participate in voluntary services. When the parents declined, the Department obtained a detention warrant and filed a section 300 petition on behalf of the children. The petition alleged that the parents engaged in domestic violence, drug use, including daily use of marijuana, and that both parents had emotional and/or mental health problems rendering them incapable of providing care for the children.

At the March 24, 2014 detention hearing, the juvenile court found Curley Sr. to be the presumed father of Curley B. and David J. to be the alleged father of Alayah J. The court ordered both children detained and accorded the parents monitored visits.

_____

[3] David J. is not a party to this appeal.

3

**Adjudication and disposition hearing as to Alayah J. and Curley B.**

On May 9, 2014, both mother and Curley Sr. pled no contest to an amended petition. The sustained allegations stated that mother and Curley Sr. had been involved in a physical altercation in the presence of the children in which Curley Sr. struck mother and that he was arrested and convicted of domestic violence; that Curley Sr. had mental health problems, including paranoid schizophrenia and substance abuse, and was a recent abuser of marijuana.

Mother agreed to a court ordered case plan that required her to participate in a domestic violence support group for victims; random or on demand consecutive drug tests; a full rehabilitation program with random testing in the event of any missed or positive drug test; a parenting program; a psychological assessment/psychiatric evaluation; and individual counseling to address case issues, including substance abuse, domestic violence, and protective parenting.

**Review proceedings and termination of reunification services**

In November 2014, the Department reported that Alayah J. and Curley B. were both placed with a paternal great-aunt, Ms. B., and were thriving under her care. Ms. B. was also monitoring mother's and Curley Sr.'s twice weekly visits with the children. She reported in August that the parents had appeared unannounced at her home. When Ms. B. told mother that Alayah J. was being disciplined for kissing a boy, mother slapped Alayah J. across the face with a sandal, causing the child's nose to bleed. Mother and Curley Sr. returned to Ms. B.'s home the following day and attempted to take a television from the home. In the ensuing argument, the parents assaulted Ms. B. and her

4

16-year-old granddaughter.  Curley Sr. was subsequently arrested on a warrant relating to the assault.

The social worker advised Ms. B. to have the parents contact the Department for future visits.  Neither parent contacted the Department to schedule a visit during the months of September and October.

Mother appeared at the November 7, 2014 review hearing, but Curley Sr. remained incarcerated.  At the parents' request, the matter was set for a contested hearing on January 5, 2015.

In December, Curley Sr. told the social worker that he and mother were living with friends but continued to receive mail at their address of record.  He said mother was participating in counseling and a parenting program and was pregnant and receiving prenatal care.

At a January 5, 2015 contested status review hearing, the juvenile court found mother and Curley Sr. in partial compliance with their case plans and terminated reunification services.

**Birth of Christopher, and detention and section 300 petition on his behalf**

Mother gave birth to Christopher on December 14, 2014, after suffering a grand mal seizure.  Christopher weighed only 1 lb. 4 oz. and was in the NICU.  Mother had tested positive for marijuana on the date of Christopher's birth, but Christopher's toxicology screen had been negative.

Christopher was discharged from the hospital in March 2015, and the Department obtained a removal order and placed him with Ms. B.

On March 19, 2015, the Department filed a section 300 petition on Christopher's behalf alleging domestic violence between mother and Curley Sr., a history of substance abuse and current use of marijuana by both parents, and Curley Sr.'s

mental and emotional problems as the basis for juvenile court jurisdiction over Christopher.

At the March 19, 2015 detention hearing, the juvenile court ordered Christopher detained. On March 20, 2015, the court ordered weekly on demand drug and alcohol testing for both parents.

At the May 4, 2015 contested jurisdictional hearing as to Christopher, the juvenile court sustained the allegations of the section 300 petition and declared Christopher to be a dependent of the court.

**Review proceedings**

In April 2015, Ms. B. told the social worker that she wanted to adopt Curley B.

Mother had a monitored visit with the children on April 15, 2015, and the visit went well. Mother told the social worker she was unsure whether she could continue the twice weekly visits because she was busy with her programs but said she would visit at least once a week. Mother tested positive for marijuana on April 23 and 27, 2015, and failed to appear for testing on April 17.

In a June 2015 interview, mother told the social worker that she had begun a new program that she expected to complete by the end of August or mid-September. She had not visited the children since April. She had also failed to appear for drug testing in May and June.

**Disposition hearing as to Christopher**

At the July 6, 2015 contested disposition hearing as to Christopher, the juvenile court received into evidence documentation from mother's programs and her stipulated testimony presented at the jurisdictional hearing. The court declared Christopher a dependent child, removed him from parental custody, and ordered him placed with Ms. B. The

juvenile court ordered no reunification services for mother and Curley Sr., after finding by clear and convincing evidence that the parents' reunification services had been terminated with respect to Christopher's siblings, and that neither parent had made a reasonable effort to treat the problems that had led to the siblings' removal.

The juvenile court accorded both parents monitored visits twice a week for one hour and ordered that they not visit together. The court further ordered both mother and Curley Sr. to continue to drug test through the Department and set a section 366.26 hearing.

**Section 366.26 proceedings**

Mother and Curley Sr. were arrested in July 2015 for assaulting Ms. B. and vandalizing her home. Both parents were subsequently incarcerated. Mother was unable to visit with the children during her incarceration, but the Department arranged for five telephone calls between mother and the children from October to December 2015. Upon her release from custody in December 2015, mother had negative drug tests on December 16, and 21, 2015, January 6, and 20, 2016. Mother's incarceration prevented her from completing a parenting class she had been attending, but she told the social worker that she intended to complete her court ordered programs.

In its February 2016 section 366.26 report, the Department reported that Ms. B. was willing to adopt Alayah J., Curley B., and Christopher together as a sibling set. All three children were happy, well-cared for, and comfortable in Ms. B.'s home, although Alayah J. said she missed her mother and father. Alayah J. had been approved for services through the Regional Center. Curley B. was being assessed for services because he was at times defiant and subject to extreme tantrums. He was receiving counseling and weekly therapy. Christopher had been referred to

several doctors for gastrointestinal problems, poor vision, and a possible seizure disorder.

Mother visited with Curley B. and Christopher on January 5, 2016. She was unable to visit with Alayah J. because a criminal restraining order prohibited her from having contact with the child. Mother was appropriate during the visit, and Curley B. appeared comfortable and confident in mother's presence. Christopher, however, cried when removed from his caretaker, who had to be called in to calm him an hour into the visit. Mother visited again with Curley B. and Christopher on January 20, 2016. She was appropriate until Curley B. hit her in the mouth while they were playing, and mother spanked him. The social worker reminded mother that the juvenile court's order prohibited corporal punishment. During the visit mother provided the social worker with a criminal court order allowing her to have contact with Alayah J. solely for purposes of court ordered visitation. Mother continued to deny that she had any problems before the Department's intervention and claimed the children had been separated from their parents because of false reports by spiteful relatives.

The juvenile court set a section 366.26 hearing for all three children for April 19, 2016.

**Mother's section 388 petition**

On April 18, 2016, mother filed a section 388 petition on a California Judicial Council form JV-180 requesting unmonitored visits and an assessment of her home for overnight visits and placement via a home of parent order. On a form JV-183 court order, the juvenile court ordered a hearing on mother's petition by checking option 4 on the pre-printed form, which states: "The court orders a hearing on the form JV-180 request because the best interest of the child may be promoted by the request." The court set the hearing on mother's petition for the same date and

time as the section 366.26 hearing.  The juvenile court indicated, however, that the hearing on mother's section 388 petition would occur after the section 366.26 hearing, and only if mother's parental rights were not terminated, by a handwritten interlineation on the form order, adding the phrase "(if parental rights are not terminated)" between the words  "form JV-180" and "request."

**Section 366.26 hearing**

In last minute information reports for the court filed on April 19, 2016, the Department notified the juvenile court that Ms. B.'s adoption home study had been approved and that mother had tested positive for marijuana on April 12, 2016.

At the outset of the April 19, 2016, combined section 366.26 and section 388 hearing, the juvenile court stated that mother had filed a section 388 petition seeking unmonitored visits and an assessment of her home for overnight visits and a home of parent order, and that the court had previously indicated that it would address mother's requested orders if her parental rights were not terminated.  The court then granted a request by Alayah J.'s counsel to continue the hearing to the following day.

On April 20, 2016, the juvenile court again stated that it would address mother's section 388 petition if her parental rights were not terminated.  The court then proceeded with the section 366.26 hearing.

Mother testified that she was incarcerated from July 29 to December 9, 2016, and that although she did not visit with the children during that time, she spoke with them by telephone two to three times a week for 15 to 20 minutes.  She said that she had otherwise visited regularly with the children, but acknowledged that a restraining order had prohibited her from having contact with Alayah J. for a period of time.  Mother testified that she and the children share "the biggest bond ever."

9

Mother's counsel argued that the children share a significant bond with mother and that terminating parental rights would be detrimental to them. The juvenile court found the children were likely to be adopted and terminated parental rights. The juvenile court did not consider mother's section 388 petition. This appeal followed.

## DISCUSSION

### I. Applicable law and standard of review

Section 388[4] accords a parent the right to petition the juvenile court for modification of any of its orders based upon changed circumstances or new evidence. (§ 388; *In re Marilyn H.* (1993) 5 Cal.4th 295, 308-309 (*Marilyn H.*).) To obtain the requested modification, the parent must demonstrate both a change of circumstance or new evidence, and that the proposed change is in the best interests of the child. (Cal. Rules of Court, rule 5.570(d) (rule 5.570); *In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

Section 388 provides an "'escape mechanism'" for parents facing termination of their parental rights by allowing the juvenile court to consider a legitimate change in the parent's circumstances after reunification services have been terminated. (*Marilyn H., supra*, 5 Cal.4th at p. 309.) This procedural mechanism, viewed in the context of the dependency scheme as a whole, provides the parent due process while accommodating the child's right to stability and permanency. (*Id.* at p. 307.) After reunification services have been terminated, it is presumed that continued out-of-home care is in the child's best interests. (*Id.* at

---

4       Section 388 provides in relevant part: "Any parent . . . [of] a child who is a dependent child of the juvenile court . . . may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made." (§ 388, subd. (a)(1).)

p. 310.)  Section 388 allows a parent to rebut that presumption by demonstrating changed circumstances that would warrant modification of a prior court order.  (*Ibid*.)

To obtain an evidentiary hearing on a section 388 petition, a parent must make a prima facie showing that circumstances have changed since the prior court order, and that the proposed change will be in the best interests of the child.  (Rule 5.570(a), (e); *In re G.B.* (2014) 227 Cal.App.4th 1147, 1157 (*G.B.*).)  To make a prima facie showing under section 388, the allegations of the petition must be specific regarding the evidence to be presented and must not be conclusory.  (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.)  A section 388 petition must be liberally construed in favor of granting a hearing to consider the parent's request.  (Rule 5.570(a).)

We normally review the grant or denial of a section 388 petition for an abuse of discretion.  (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 71.)  While the abuse of discretion standard gives the court substantial latitude, "[t]he scope of discretion always resides in the particular law being applied, i.e., in the 'legal principles governing the subject of [the] action . . . .'  Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an 'abuse' of discretion.  [Citation.]"  (*City of Sacramento v. Drew* (1989) 207 Cal.App.3d 1287, 1297.)  When the issue on appeal involves the interpretation and proper application of the dependency statutes, de novo review applies.  (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 344 (*Anthony Q.*).)

## II.  Forfeiture

The Department argues that mother forfeited any challenge to the juvenile court's order because she did not object, at the outset of the combined section 388 and section 366.26 hearing, when the juvenile court stated that it would first

11

proceed with the section 366.26 hearing and then consider mother's petition only if parental rights were not terminated. Although the failure to object to a juvenile dependency order on a specific ground generally forfeits a parent's right to challenge that order on appeal, when the appeal involves an important and purely legal issue, an appellate court has discretion to consider the issue notwithstanding the parent's failure to object. (*Anthony Q., supra*, 5 Cal.App.4th at p. 345.) We exercise our discretion to do so here.

## III. The juvenile court erred by conditioning the hearing on mother's section 388 petition upon non-termination of her parental rights

Section 388 permits a parent to petition the juvenile court "for a hearing" to change, modify, or set aside any prior court order. (§ 388, subd. (a).) Subdivision (d) of section 388 requires the juvenile court to order a hearing on a petition for a change of court order when the court finds that the best interests of a child may be promoted by a change in the previous order. (§ 388, subd. (d); *G.B., supra*, 227 Cal.App.4th at p. 1158.)

Rule 5.570 of the California Rules of Court governs the grant or denial of a hearing on a section 388 petition. Rule 5.570(d) allows a juvenile court to summarily deny a petition on certain specified grounds, including that the petition "fails to state a change of circumstance or new evidence that may require a change of order or . . . [¶] . . . fails to demonstrate that the requested modification would promote the best interest of the dependent child." (Rule 5.570(d)(1), (2).) Rule 5.570(f) allows the juvenile court to grant, without a hearing, a section 388 petition for modification of an order if all parties stipulate to the requested modification. Absent such stipulation or summary denial of the petition, rule 5.570(f) requires the juvenile court to either order a hearing on merits of the section 388 petition, or

12

order a hearing for the parties to argue whether an evidentiary hearing on the petition should be granted or denied. Rule 5.570(f) states:

> "If all parties stipulate to the requested modification, the court may order modification without a hearing. If there is no stipulation and the petition has not been denied ex parte under section (d), the court must either:

> "(1) order that a hearing on the petition be held within 30 calendar days after the petition is filed; or

> "(2) order a hearing for the parties to argue whether an evidentiary hearing on the petition should be granted or denied. If the court then grants an evidentiary hearing on the petition, that hearing must be held within 30 calendar days after the petition is filed."

Consistent with these statutory requirements, the form JV-183 court order gives the juvenile court four options when presented with a section 388 request to change a prior court order: (1) grant the request because all parties and attorneys agree to the request; (2) summarily deny the request on various grounds, including that the request does not state new evidence or a change of circumstances, or that the proposed change of order does not promote the best interests of the child; (3) grant a hearing on whether the court should grant or deny an evidentiary hearing on the request; and (4) order a hearing because the best interests of the child may be promoted by the request.

The juvenile court in the instant case did not summarily deny mother's section 388 petition, nor did it grant a hearing on whether or not an evidentiary hearing should be held on mother's request. Rather, the court selected option 4 on the form JV-183 court order, thereby indicating that it had found that the best

13

interests of the children may be promoted by mother's request. After making that finding, the juvenile court was then compelled to order a hearing on mother's section 388 petition. (§ 388, subd. (d); rule 5.570(f); *G.B., supra*, 227 Cal.App.4th at p. 1158.)

The juvenile court did order a hearing on mother's section 388 petition, but it did so on the condition that mother's parental rights were not terminated at the section 366.26 hearing the court conducted before considering mother's petition. Conditioning the grant of hearing on a parent's section 388 petition upon non-termination of parental rights is not an available option under section 388 or rule 5.570. The statutory requirements make clear that if a court does not summarily grant or deny a section 388 petition, only two options are available. The court must either (1) hold an evidentiary hearing on the petition, or (2) hold a hearing for the parties to argue whether an evidentiary hearing on the petition should be granted. (Rule 5.570(f).) The juvenile court in the instant case did neither. Its conditioning the grant of a hearing on mother's section 388 petition was outside the scope of its statutory authority.[5]

---

[5] The instant case is distinguishable from *G.B.*, a case in which the juvenile court used a previous version of the Judicial Council form JV-183 court order to rule on a parent's request for a hearing on a section 388 petition. The court in *G.B.* checked the box on the form order indicating that a hearing would be held "'because the best interest of the child may be promoted by the request.'" (*G.B., supra*, 227 Cal.App.4th at p. 1158.) By selecting that box on the form order, the court in *G.B.* did not set an evidentiary hearing on the petition, but scheduled the matter for the parties to argue whether or not an evidentiary hearing should be held -- an option not included on the form order then in use but that is included on the current form JV-183 used by the juvenile court in this case. (*Ibid.*) The court in *G.B.* also expressly clarified that it had considered the parent's petition "'*in*

14

By deferring consideration of mother's petition until after the section 366.26 hearing, the juvenile court circumvented the "'escape mechanism'" accorded to mother by section 388 and foreclosed any opportunity for her to demonstrate a legitimate change of circumstances before her parental rights were terminated.  (See *Marilyn H., supra*, 5 Cal.4th at p. 309.)  The section 366.26 hearing was not an adequate substitute for a hearing on mother's petition.  Mother sought to prove changed circumstances before a permanent plan was implemented.  At the section 366.26 hearing, the juvenile court no longer considers reunification with mother as an option, but focuses on providing a permanent home for the child.  (§ 366.26; *In re Hashem H.* (1996) 45 Cal.App.4th 1791, 1801.)  There is nothing in the record to indicate that the juvenile court allowed mother to present evidence of changed circumstances or that mother presented such evidence.

The juvenile court accordingly erred by denying mother an evidentiary hearing on her section 388 petition.

**IV.  The error does not require reversal**

Our determination that the juvenile court erred does not necessarily mandate reversal of the order terminating mother's parental rights.  "The California Constitution prohibits a court from setting aside a judgment unless the error has resulted in a 'miscarriage of justice.'  (Cal. Const., art. VI, § 13.)"  (*In re Celine R.* (2003) 31 Cal.4th 45, 59-60.)  Our Supreme Court has interpreted that language to permit reversal "only if the reviewing court finds it reasonably probable that the result would have been more favorable to the appealing party but for the error" and has applied that same test in juvenile dependency

*order to have an opportunity for the parties to argue for a hearing*'" and in fact allowed the parties to do so.  (*Ibid.*)

matters.  (*Ibid.*)  Under the circumstances presented here, no miscarriage of justice occurred.

The evidence in the record shows that mother was only in partial compliance with her court ordered case plan.  She tested positive for marijuana six days before filing her section 388 petition.  There was no evidence that mother participated in any drug rehabilitation program or in individual counseling to address substance abuse and mental health issues.  She had never progressed to unmonitored visits with the children.  Because the evidence showed, at best, changing rather than changed circumstances, we do not find it reasonably probable that mother's parental rights would not have been terminated had the juvenile court not denied her a hearing on her section 388 petition.  The error accordingly was harmless.

## DISPOSITION

The order terminating parental rights is affirmed.

## CERTIFIED FOR PUBLICATION


_____, J.
CHAVEZ

We concur:


_____, Acting P. J.
ASHMANN-GERST


_____, J.*
GOODMAN

_____

* Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.