Filed 11/22/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re JUAN A., a Person Coming Under the Juvenile Court Law. | B337033<br>(Los Angeles County<br>Super. Ct. No. 19CCJP04776) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>        v.<br><br>JUAN A., a Minor, etc.,<br><br>        Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Tiana J. Murillo, Judge.  Reversed and remanded with directions.

Leslie A. Barry, under appointment by the Court of Appeal, for Appellant.

No appearance for Plaintiff and Respondent.

_____

Appellant Juan A. is a teenager and dependent of the juvenile court. The court removed Juan from parental custody and later terminated family reunification services. The court did not terminate parental rights because the court also found he was not adoptable and there was no one willing to be his legal guardian. Instead, Juan remains in long-term foster care with the court scheduling periodic status review hearings. Juan has attended many of the hearings held during this dependency case (including the adjudication and disposition hearings), but not the status review hearing that is the subject of this appeal. At that status review hearing, the court denied Juan's trial counsel's request for a brief continuance so that Juan could be present at the hearing. The court erred because Juan had a right to be present at that hearing pursuant to Welfare and Institutions Code[1] section 349.

This error prejudiced Juan. Juan has shown great drive under difficult circumstances. He is a self-starter; because Juan cannot reunify with his family, he has had no other choice in order to succeed. He is striving to do well in school and wants to get a job. He depends on the juvenile court and the Los Angeles County Department of Children and Family Services (DCFS or the agency) for many, if not most, of his needs. Had he been

_____

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

present at the hearing, the record reveals there is a reasonable chance he would have sought assistance to improve his grades in order to enter standard, instead of special education, instruction and to obtain a work permit. The record also reveals there is a reasonable chance the court would have ordered DCFS to offer services to assist Juan in achieving these goals.[2]

We thus reverse and remand for a new status review hearing in accordance with the procedures in section 349.

## PROCEDURAL BACKGROUND

We summarize only the procedural history pertinent to this appeal. We address facts relevant to Juan A.'s appellate claim in our Discussion, *post*.

In July 2019, DCFS filed a juvenile dependency petition concerning Juan, who was born in December 2008. As sustained by the juvenile court in October 2019, the petition alleged, inter alia, that dependency jurisdiction was proper under section 300, subdivision (b)(1) because Juan's mother, Maria C. (mother), "inappropriately physically disciplined" Juan, mother had mental and emotional problems, and she failed to provide adequate care for Juan's mental and emotional problems.[3] In January 2020,

---

[2] DCFS informed this court that the agency is "not a proper respondent and will not be filing a brief in the instant appeal."

[3] Mother's trial counsel informed us via letter that mother is not a proper respondent to this appeal.

Additionally, DCFS claimed in the dependency petition that the whereabouts of Juan's alleged father were unknown. Juan's alleged father is not a party to this appeal. The identity and location of the alleged father have no bearing on our opinion.

the juvenile court declared Juan a dependent of the court, removed him from parental custody, and ordered DCFS to provide family reunification services to mother. The court ultimately terminated mother's reunification services in August 2021.

At the section 366.26 review hearing held in June 2023, the juvenile court decided not to terminate parental rights because it found Juan was not adoptable and no potential legal guardians were available. The court directed DCFS to provide Juan with permanent placement services and ordered that Juan remain in foster care.

On September 28, 2023, the juvenile court found that Juan's placement was appropriate, ordered DCFS to continue providing permanent placement services to him, and scheduled a permanency planning review hearing for March 28, 2024.[4]

On March 28, 2024, Juan's trial counsel requested a brief continuance of the permanency planning review hearing to allow Juan to attend the proceeding. The juvenile court denied that request. The court found Juan's placement was appropriate, and

_____

[4] Although the juvenile court did not further describe the permanent placement services for Juan, the status review report filed in advance of the March 28, 2024 hearing discussed in the next paragraph indicates DCFS interpreted this order to require it to provide multiple services to assist Juan in transitioning from foster care to successful adulthood, including "provid[ing] case management services to [Juan's foster] family," "monitor[ing his] health related services," and "monitor[ing his] education." (Some capitalization omitted.) (See also fn. 12 & accompanying text, *post* [noting the juvenile court is obligated to ensure Juan receives services needed to assist him in making the transition from foster care to successful adulthood].)

4

ordered the agency to continue providing permanent placement services.  The court scheduled the next permanency planning review hearing for September 26, 2024, and ordered DCFS to transport Juan to court for that proceeding.

Juan timely appealed from the orders issued at the March 28, 2024 permanency planning review hearing.

Although the juvenile court's September 26, 2024 minute order indicates Juan's trial counsel made an appearance at the permanency planning review hearing held on that date, the order does not indicate Juan attended the hearing.[5]  Per the minute order, the court found Juan's placement was appropriate, instructed DCFS to provide Juan with permanent placement services and an "ILP referral," and scheduled the next permanency planning review hearing for March 27, 2025.[6]

## DISCUSSION

Juan A. argues the juvenile court prejudicially erred in denying his trial counsel's request to grant a brief continuance of

---

[5]  We, sua sponte, take judicial notice of the minute order from the September 26, 2024 hearing.  (Evid. Code, §§ 452, subd. (d), 459.)

[6]  We, sua sponte, take judicial notice of a page on DCFS's website that defines the abbreviation "ILP" as the "Independent Living Program."  (See *Los Angeles County Department of Children & Family Services, Teens 16 and Older* <https://dcfs.lacounty.gov/youth/teens-16/> (as of Nov. 19, 2024), archived at <https://perma.cc/F5YJ-5FFB>; *In re J.R.* (2022) 82 Cal.App.5th 569, 589, fn. 27 [indicating the Court of Appeal may take judicial notice of statements made on a government agency's website] (*J.R.*).)

the March 28, 2024 permanency planning review hearing to enable him to attend the proceeding.  We agree.

"A minor who is the subject of a juvenile court hearing . . . is entitled to be present at the hearing."  (§ 349, subd. (a).)  Subdivision (d) in turn provides:  "If the minor is 10 years of age or older and he or she is not present at the hearing, the court shall determine whether the minor was properly notified of his or her right to attend the hearing and inquire whether the minor was given an opportunity to attend.  If that minor was not properly notified or if he or she wished to be present and was not given an opportunity to be present, the court *shall* continue the hearing to allow the minor to be present unless the court finds that it is in the best interest of the minor not to continue the hearing.  The court *shall* continue the hearing only for that period of time necessary to provide notice and secure the presence of the child.  The court may issue any and all orders reasonably necessary to ensure that the child has an opportunity to attend." (*Id.*, subd. (d), italics added.)

" 'We review the juvenile court's decision to deny a continuance for abuse of discretion.' "  (*In re D.N.* (2020) 56 Cal.App.5th 741, 756.)  " ' " 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.' " ' "  (*In re N.M.* (2023) 88 Cal.App.5th 1090, 1094.) "While the abuse of discretion standard gives the court substantial latitude, '[t]he scope of discretion always resides in the particular law being applied, i.e., in the "legal principles governing the subject of [the] action . . . ."  Action that transgresses the confines of the applicable principles of law is outside the scope of discretion and we call such action an "abuse"

6

of discretion.  [Citation.]'  [Citation.]"  (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478–479 (*Alayah J.*).)

Here, Juan's trial counsel invoked section 349 in support of her request for a brief continuance to allow Juan to attend the March 28, 2024 hearing.  Because Juan was 15 years old on the date of the hearing, section 349, subdivision (d) obligated the juvenile court to "inquire whether the minor was given an opportunity to attend" the hearing, and required the court to continue the hearing if Juan "wished to be present and was not given an opportunity to be present . . . ."[7]  (See § 349, subd. (d).)

The juvenile court stated that Juan's attorney had informed the court (apparently off the record) that Juan "was to be brought in, and he's not on the list . . . ."[8]  The court appeared to accept Juan's counsel's off-the-record representations but nonetheless faulted the attorney for failing earlier to request that Juan "be ordered present."  These remarks on the part of the juvenile court and Juan's trial counsel's request for a brief continuance to secure his presence indicate that although Juan

_____

[7] Although section 349, subdivision (d) also required the court to "determine whether the minor was properly notified of his . . . right to attend the hearing," (see § 349, subd. (d)), Juan's appellate counsel acknowledges, "DCFS provided notice to Juan of the March 28, 2024 hearing that also informed him that he had a right to be present, be represented by an attorney and present evidence."

[8] The juvenile court did not identify this "list" from which Juan had been omitted.  Because the court later indicated that an order requiring Juan to attend the next review hearing would obligate DCFS to provide him with transportation, the list in question appears to identify dependent children the agency must bring to the courthouse.

7

desired to attend the hearing, Juan—through inadvertence not his own—was not afforded that opportunity.

Further, because the reporter's transcript of the hearing does not show the juvenile court further inquired into the circumstances surrounding Juan's absence, the record is devoid of any evidence contradicting the inference that Juan wanted to attend the hearing but was prevented from doing so.[9] Accordingly, section 349, subdivision (d) required the court to "continue the hearing to allow the minor to be present," and the court abused its discretion by failing to do so. (See § 349, subd. (d); see also *Alayah J.*, *supra*, 9 Cal.App.5th at p. 479 [defining an abuse of discretion as " '[a]ction that transgresses the confines of the applicable principles of law' "].)

Section 349 authorized the juvenile court to deny counsel's request if "the court f[ound] that it [was] in the best interest of the minor not to continue the hearing." (See § 349, subd. (d).) The court, however, made no such finding, and it is not apparent to us that the court's refusal to continue briefly the hearing was in Juan's best interest. Further, although the court stated, "[T]here is minimal prejudice to this child to not being here for a review hearing," our analysis below demonstrates that the denial of counsel's request for a continuance did prejudice Juan.

---

[9] Although Juan's appellate counsel acknowledges her client did not attend every hearing held prior to March 28, 2024, Juan did make multiple appearances during the dependency proceedings, including at the adjudication hearing, the disposition hearing, and a psychotropic medication review hearing. The evidence further demonstrates Juan's interest in participating in his dependency case.

8

" 'When [an] error is one of state law only,' " as is the case here,[10] " 'it generally does not warrant reversal unless there is a reasonable probability that in the absence of the error, a result more favorable to the appealing party would have been reached. [Citation.]' [Citation.]" (*In re Christopher L.* (2022) 12 Cal.5th 1063, 1073.) " ' "[A] 'probability' in this context does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." [Citation.]' [Citation.]" (*Conservatorship of Maria B.* (2013) 218 Cal.App.4th 514, 532.)

We acknowledge that at the March 28, 2024 permanency planning review hearing, Juan's trial counsel submitted on the agency's recommendations (a) Juan "remain suitably placed with [his c]aregivers" and (b) all prior orders, not in conflict, "remain in full force and effect." We conclude, however, that had the juvenile court briefly continued the hearing to secure Juan's presence, there is a reasonable probability he would have obtained a more favorable result than merely maintaining the status quo.

According to the status review report DCFS filed on March 12, 2024, Juan was then "receiving IEP services."[11] The

---

**10** Juan also argues the juvenile court's denial of counsel's request for a continuance violated his right to due process. Because we find the court's ruling violated section 349, we do not reach Juan's constitutional claim. (See *J.R.*, *supra*, 82 Cal.App.5th at p. 593, fn. 36 [" '[C]ourts generally should avoid resolving constitutional issues if a case can be decided on statutory grounds.' "].)

**11** An "IEP" is an " 'individualized education plan,' " that is, "a written statement for the child developed in a participatory process involving parents and school personnel" that "describes

9

report indicates that Juan informed the agency "he [was] doing his best at school because [(1)] he [was] really serious about transferring to standard classes" and (2) he wanted to obtain a work permit. Although DCFS informed the court Juan had said "he was doing excellent in school" and was "earning As and Bs," the agency submitted a report card indicating Juan still was having some difficulty achieving his educational goals. The report card, which is dated September 29, 2023, shows Juan earned three A grades and one B, and that he received a C+ grade in his English course and a C in physical education. The physical education instructor noted Juan was a "pleasure to have in class," but had "incomplete/late/missing assignments." (Capitalization omitted.)

Furthermore, according to the status review report, Juan's foster care social worker told the agency that Juan "is not afraid to advocate for what he needs[,] . . . [he] likes to ask questions[,] and [he] explores his future endeavors with [the foster care social worker]."

Given Juan's stated objectives and his willingness to ask for assistance to meet his needs, we conclude that had he been able to attend the review hearing, there is a reasonable chance Juan would have requested additional services, for example, tutoring or career counseling, to improve his academic performance and chances of obtaining employment. Indeed, Juan had a statutory right to "address the court and participate in the

_____

the child's needs, academic and functional goals, and . . . the special education, related services, and program modifications and accommodations that will be provided" to the child. (See *B.H. v. Manhattan Beach Unified School Dist.* (2019) 35 Cal.App.5th 563, 568, 570.)

hearing." (See § 349, subd. (c).) Also, because the juvenile court is tasked with ensuring Juan has "the services needed to assist [him] . . . to make the transition from foster care to successful adulthood,"[12] there is a reasonable chance the court would have ordered DCFS to provide Juan with services suitable for that purpose.

To reiterate what we said at the outset, Juan did not have parents advocating for his success. Juan had to depend largely on his own initiative and needed to obtain support from the juvenile court and DCFS. His presence at the review hearing was not a mere formality; instead, it would have enabled Juan to inform the court of his needs. In short, the court's denial of Juan's counsel's request for a brief continuance was prejudicial and warrants reversal.

---

[12] (See § 366.3, subd. (e)(10) [requiring the juvenile court to consider this issue "at the review held every six months pursuant to subdivision (d)"]; see also *id.*, subd. (d)(1) ["If the child . . . is in a placement other than the home of a legal guardian and jurisdiction has not been dismissed, the status of the child shall be reviewed at least every six months. . . . The review of the status of a child . . . for whom the court has not ordered parental rights terminated and who has not been ordered placed for adoption may be conducted by the court."].)

## DISPOSITION

We reverse the orders issued at the March 28, 2024 permanency planning review hearing, and remand the matter to the juvenile court to hold a new permanency planning review hearing at which appellant Juan A. shall be afforded the opportunity to be present in accordance with the procedures in Welfare and Institutions Code section 349.

CERTIFIED FOR PUBLICATION.


BENDIX, J.


We concur:



ROTHSCHILD, P. J.



WEINGART, J.