Filed 4/3/25  In re D.J. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re D.J., a Person Coming Under the Juvenile Court Law. | B336307<br>(Los Angeles County Super. Ct. No. 21CCJP02161) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>A.W.,<br><br>        Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tiana J. Murillo, Judge. Affirmed.

Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, Bryan Mercke, Deputy County Counsel, for Plaintiff and Respondent.

_____

## I. INTRODUCTION

A.W. (mother) appeals from the juvenile court's denial of her Welfare and Institutions Code section 388[1] petition. We affirm.

## II. BACKGROUND

On May 5, 2021, the child, D.J., then five months old, was removed from mother. On August 2, 2021, the juvenile court sustained an amended section 300 petition that alleged the following counts:

a-1 and b-2. Mother and her male companion engaged in a violent altercation in the child's presence.

a-2 and b-4. Mother had a history of violent and assaultive behavior in the child's presence, she threw a can at and injured an unrelated woman, she struck maternal grandmother and

---

[1] All further statutory citations are to the Welfare and Institutions Code.

2

vandalized her car, she was arrested for assault with a deadly weapon, and she had a conviction for battery.

b-1.  Mother placed the child in a detrimental and endangering situation when mother assaulted an unrelated woman, mother's male companion brandished a BB gun, and mother and her male companion stole property from the unrelated woman.

b-3.  Mother had a history of substance abuse and currently abused marijuana and ecstasy pills.  On March 3, 2020, mother, while pregnant with the child, was arrested for possession of a controlled substance.

b-6.  Mother had mental and emotional problems including a diagnosis of ADHD, mood disorder, and bipolar disorder that rendered her unable to provide regular care for the child.  Mother previously was involuntarily hospitalized for the evaluation and treatment of her psychiatric condition.  Mother failed to take her psychotropic medication as prescribed.

The juvenile court ordered mother to participate in family reunification services.  Mother was to participate in a drug and alcohol program for a minimum of six months with weekly on demand drug and alcohol testing and aftercare; a developmentally appropriate parenting program; mental health counseling including a psychological assessment, a psychiatric evaluation, and taking all prescribed psychotropic medications; and individual counseling with a licensed therapist to address case issues including anger management, interpersonal relationships, and mental health diagnosis management.  The

3

court granted mother one three-hour weekly monitored visit with the child.[2]

On December 9, 2022, the juvenile court terminated mother's family reunification services and set the matter for permanent planning. In terminating mother's services, the court found mother had complied with many of her services, but her efforts to address her marijuana and ecstasy use were not substantial. In July 2022, mother had a relapse involving cocaine and she had missed several drug tests. The court also noted the child's very young age and the fact that mother had received services well beyond the six months to which she was entitled. (See § 361.5, subd. (a)(1)(B).)

On February 22, 2024, mother filed a section 388 petition concerning the juvenile court's order terminating family reunification services. Mother asked the court to return the child to her custody or to grant her six additional months of family reunification services. Mother stated there had been a change in circumstances in her case: there had been no reports of violent or assaultive behavior for over 12 months, she was in substantial compliance with her case plan—she had not had a positive drug test in over 12 months and had not missed any drug tests, she had participated in therapy and had transitioned to mental health services, she had been compliant with her prescribed medications, she had completed an anger management course, and she was in transitional housing.

According to mother, the change in the juvenile court's order was in the child's best interest because mother was

---

[2]    By July 7, 2022, mother's visitation had expanded to nine hours per week.

substantially case compliant, she consistently visited the child, and the child had a strong bond with her.

In support of her section 388 petition, mother submitted, among other things, letters demonstrating her participation in and completion of reunification services. In her supporting declaration, mother stated, "I'm learning to control my anger . . . ."

In the Department of Children and Family Services's (Department) Interim Review Report for the section 388 hearing, filed March 8, 2024, the Department reported on mother's continuing participation in services. The Department also reported mother had not participated in drug and alcohol testing since November 2022. On March 7, 2024, a social worker interviewed mother for the report. The social worker asked mother if she was willing to take a drug test the next day. Mother responded, "'It's raining.'" The social worker explained that rain was not forecast for the next day and weather was not a reasonable excuse for not participating in a drug test. Mother became defensive, but agreed to take a drug test.[3]

The child had been in the prospective adoptive parent's home since September 7, 2022, and was well-bonded with her. On March 3, 2024, a social worker spoke with the prospective adoptive parent. She reported mother had scheduled telephone calls with the child on Mondays and Wednesdays when the child was in day care. Day care informed her that mother was "irregular" in calling or calling at the scheduled time.

The prospective adoptive parent also reported that although she did not supervise mother's visits with the child she was aware mother was still struggling with managing the child's

---

[3]     The results of the test were pending.

behavior. The day before, mother called the prospective adoptive parent indicating she was having trouble with the child and needed help. Further, mother still appeared to be easily irritated by the child's behavior, which behavior was normal for a child of her age. Mother was inconsistent in attending visits and "at times" ended visits early.

In a March 6, 2024, interview, a social worker who monitored mother's visits with the child from age five months to eight months and again starting in September 2023, stated that "nothing had changed" during her period of monitoring and mother had not shown growth during her involvement with the Department. The monitor reported mother did not understand the child's milestones and development. Mother was still impatient with the child. Mother was unable to manage the child's tantrums. Mother blamed the Department and the prospective adoptive parent for her inability to manage the child's behavior. Mother's visits with the minor were better in confined places like restaurants because the monitor needed to redirect and guide mother. For example, when the child walked away, mother had to be guided to follow her.

Mother was on time for her visits. However, mother missed visits, canceled visits, and cut visits short without explanation. The monitor only monitored mother's Sunday visits and not her Monday visits. When maternal grandmother would mention to mother during Sunday visits that mother had another visit the next day, mother would respond, "'That's two days in a row. That's too much.'" According to the monitor, mother and her personal items smelled of marijuana during visits.

As to mother's Monday visits with the child, which began in January 2024, a different social worker reported mother attended

only sporadically.  The visits were scheduled for every other Monday due to mother's expressed view that more frequent Monday visits would be too much.

In a March 6, 2024, interview, maternal grandmother stated, "'I want to be perfectly honest.  She is making progress, but still needs to make more progress.'"  Maternal grandmother stated mother was attentive during visits with the child and handled the child when the child had tantrums.  Mother and the child were emotional and mother was learning to manage the child's emotions and to discipline the child without becoming emotional herself.

In October 2023, mother and maternal grandmother had a verbal dispute.  Mother was in "transition" because she did not have her medication and was not in therapy.  Maternal grandmother wanted mother to take a walk or create space, but mother had nowhere to go so maternal grandmother called the police.  Maternal grandmother did not want the police to arrest mother, but to get mother a mental health evaluation so she could get the help she needed.  The police detained mother.

The Department acknowledged mother had completed her court ordered services, but concluded she had not made significant progress.  She had not made the necessary changes or learned the necessary skills to alleviate the Department's concerns.  During the Department's investigation, mother had been defensive and combative and did not appear to take accountability for the concerns that brought the family to dependency court.

At the March 18, 2024, hearing on mother's section 388 petition, mother withdrew her request for custody.  Instead, she asked for additional family reunification services and liberalized

visitation. The Department and the child's counsel opposed granting mother's section 388 petition.

The juvenile court denied mother's section 388 petition, ruling there were no changed circumstances and granting the petition would not be in the child's best interest. It credited mother's changing circumstances but noted mother's aggressive outburst in October 2023. It concluded it was unable to find there were changed circumstances because "some of these issues continue to persist." In addition, because the child was very young and mother had received family reunification services over an extended period, it was not in the child's best interest to ask her to wait an additional six months to have her matter resolved.

## III.   DISCUSSION

Mother contends the juvenile court abused its discretion when it denied her section 388 petition. The court did not err.

A.   *Legal Principles and Standard of Review*

"Section 388 accords a parent the right to petition the juvenile court for modification of any of its orders based upon changed circumstances or new evidence. [Citations.] To obtain the requested modification, the parent must demonstrate both a change of circumstance or new evidence, and that the proposed change is in the best interests of the child." (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478, fn. omitted.) "The change of circumstances or new evidence 'must be of such significant nature that it requires a setting aside or modification of the challenged prior order.' [Citation.]" (*In re Mickel O.* (2011) 197 Cal.App.4th

8

586, 615; *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 ["the change in circumstances must be substantial"].)  We review a juvenile court's denial of a section 388 petition for an abuse of discretion and its factual findings for substantial evidence.  (*In re J.M.* (2020) 50 Cal.App.5th 833, 846.)

B.    *Analysis*

The evidence showed there was not a substantial change in circumstances.  Mother had continuing anger issues—she had a verbal dispute with maternal grandmother in October 2023 that was sufficiently severe the police were summoned.  Less than two weeks before the section 388 hearing, maternal grandmother stated, "I want to be perfectly honest.  She is making progress, but still needs to make more progress."  In her declaration in support of her section 388 petition, mother stated she was "learning" to control her anger—i.e., not that she had learned to control it.

The evidence also showed it was not in the child's best interest to grant the section 388 petition.  Mother struggled to manage the child's behavior and easily became irritated with the child's age appropriate behavior.  Mother blamed the child's perceived behavioral issues on the Department and the prospective adoptive parent.  Mother sporadically attended visits and participated in telephone calls with the child and believed that visits with the child two days in a row were too much.  Finally, the child was well-bonded with the prospective adoptive parent.

Accordingly, the juvenile court did not abuse its discretion in denying mother's section 388 petition.  (*In re Mickel O., supra,*

197 Cal.App.4th at p. 615; *In re Ernesto R., supra*, 230 Cal.App.4th at p. 223.)

## IV.   DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


KIM (D.), J.


We concur:



HOFFSTADT, P. J.



BAKER, J.