Filed 4/27/26 In re E.P. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re E.P., a Person Coming Under the Juvenile Court Law. | B349669 (Los Angeles County Super. Ct. No. 21CCJP02776) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. JENNIFER G., Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Juan M. Valles, Judge Pro Tempore. Affirmed.

Emery El Habiby, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

———————————

In 2022, the juvenile court assumed jurisdiction over E.P. (born in 2015), because of mother's substance abuse and serious mental health concerns. In a prior appeal, we affirmed the order assuming jurisdiction over E.P. and rejected mother's challenge to the juvenile court's dispositional order requiring her to attend a substance abuse treatment program.

The current appeal is from the denial of mother's Welfare and Institutions Code[1] section 388 petition requesting placement of E.P. in her care, or in the alternative, additional reunification services. We conclude the juvenile court did not abuse its discretion in denying mother's petition. Mother had a nine-year substance abuse problem and had relapsed just two months before the section 388 hearing. Mother also did not identify any changes in her mental health, even though mother's serious mental health issues were the other basis for taking jurisdiction over E.P. We thus affirm.

---

[1] Undesignated statutory citations are to the Welfare and Institutions Code.

# BACKGROUND

1. ***Prior Dependency History[2]***

"E.P.'s sibling, M.P. (born in 2021), was declared a dependent of the juvenile court in 2021. She was born with a positive toxicology for marijuana. Mother too tested positive for marijuana and also tested positive for amphetamines at M.P.'s birth. Mother admitted to a history of crystal methamphetamine use as well as use while pregnant with M.P. In the prior dependency proceedings [involving M.P.], the juvenile court sustained allegations that mother's substance abuse rendered her incapable of providing regular care and supervision of M.P." (*In re E.P.* (Oct. 24, 2023, B324815) [nonpub. opn.].)

"During M.P.'s case, mother enrolled in an inpatient drug program. On July 16, 2022, two days after she completed the program, mother tested positive for methamphetamine. Mother did not complete her court ordered services, including mental health services, and parenting and domestic violence programs." (*In re E.P.*, *supra*, B324815.)

2. ***In 2022, the Juvenile Court Assumes Jurisdiction Over E.P.***

E.P. lived with his paternal grandmother for three years and then lived with mother for a few weeks before the Los Angeles County Department of Children and Family Services (DCFS) commenced dependency proceedings. (*In re E.P.*, *supra*, B324815.) On October 12, 2022, the juvenile court assumed

---

[2] Mother quotes extensively from our prior opinion following mother's challenge to jurisdiction and disposition. We also rely on portions of our prior opinion.

jurisdiction over E.P., sustaining the allegation that mother's abuse of methamphetamine and marijuana prevented her from caring for E.P. The court also sustained allegations that mother had mental and emotional problems, including schizophrenia and suicidal ideation, which resulted in a suicide attempt and prevented mother from providing regular care for E.P. Additionally, the court sustained the allegation that mother failed to take her psychotropic medication as prescribed and was involuntarily hospitalized.

The court ordered mother to participate in a six-month drug and alcohol program and a 12-step program. The court ordered mother to attend parenting classes and mental health counseling, undergo a psychological assessment, take all psychotropic medications, and participate in individual counseling. (*In re E.P.*, *supra*, B324815.)

In affirming the court's jurisdictional order we concluded: "Substantial evidence supports that mother abused methamphetamine at the time of the jurisdictional hearing and that the abuse placed E.P. at substantial risk of harm. Mother suffered from cravings and urges to use methamphetamine, causing her to use it while pregnant with M.P. and still after completing her inpatient substance abuse program. The abuse affected mother's life as demonstrated by her losing custody over M.P. and hospitalization when she overdosed. Additionally, rather than visiting M.P., mother would sleep. Mother admitted she continued using controlled substances while pregnant because she ' "couldn't stop it." ' The substance abuse continued at the time of the jurisdictional hearing when mother tested positive for methamphetamine in July 2022 and missed her

4

scheduled tests in August and September 2022." (*In re E.P.*, *supra*, B324815.)

We also concluded substantial evidence supported the "conclusion that mother's mental health issues posed a substantial risk to E.P., notwithstanding the fact that mother cared for E.P. for one month without incident. Mother did not treat her mental health issues, which were serious enough to require hospitalization, caused her to ' "los[e] her mind for a little bit,' " and involved suicidal ideations and attempted suicide. There was no evidence mother could control those episodes, or understood what triggered them. Although it appears that E.P. was shielded from mother's suicide attempts and hospitalizations while he lived with paternal grandmother, there was no evidence that mother was able or willing to treat her mental illness to avoid a future episode." (*In re E.P.*, *supra*, B324815.)

We rejected mother's challenge to the juvenile court's order that she participate in substance abuse program: "The juvenile court acted well within its discretion in ordering mother to participate in the services she now eschews. A substance abuse program is designed to assist mother in ameliorating the conditions that led to the dependency proceedings, specifically mother's methamphetamine abuse." (*In re E.P.*, *supra*, B324815.)

### 3. *After a Reunification Period, Mother's Reunification Services Are Terminated*

In April 2023, (approximately six months after the juvenile court assumed jurisdiction over E.P.), DCFS reported that mother had attended a six-month program on drug and alcohol education, mother had not enrolled in a 12-step program, and mother had not enrolled in therapy. Mother stated that she stopped taking her psychotropic medication because "she felt like

she did not need them anymore." Mother reported she had stopped using methamphetamine a month earlier. "Mother admitted that these past couple of months she has not been doing what the court has asked of her . . . ." Mother missed five drug tests in 2022, two tests in January 2023, two tests in February 2023, and she tested positive for marijuana in March 2023.

In May 2023, E.P. moved into his current placement with prospective adoptive parents.

In August 2023, mother enrolled in an inpatient substance abuse program. Mother's counselor told a social worker that in September 2023, mother was placed on an involuntary hold because she was acting aggressively and crying a lot. The program discharged mother.

In October 2023, DCFS reported, "Mother stated that she has been sober for one month." Mother admitted she was not testing for controlled substances. Mother acknowledged she was addicted to controlled substances and stated she would avoid the people and places that trigger her to use those substances. Mother was attending an outpatient substance abuse program. After her positive test for marijuana, mother missed her next 14 scheduled tests. In July 2023, mother tested positive for marijuana and for oxycodone and then missed her next five scheduled tests.

On October 26, 2023, the court found mother's progress was unsubstantial and terminated her reunification services.

4. *After Mother's Reunification Services Are Terminated, Mother Enrolls in Substance Abuse Treatment and Starts Mental Health Services*

In April 2024, mother told a social worker she planned to attend a rehabilitation program. In May 2024, however, mother

tested positive for benzodiazepines and cannabis. She also was placed on a 14-day hold due to a "grave disability."[3] Around the same time, mother was arrested; she did not recall the reason for the arrest.

In September 2024, mother reported she was participating in Pacifica Housing Rehabilitation Center and previously participated at another rehabilitation center. Beginning in October 2024, mother started visiting E.P. "fairly" consistently.

In December 2024, a doctor prescribed Zoloft for mother, which she took for six days and then stopped taking it. She then started again the following month when her doctor suggested mother take the medicine at night.

In February 2025, DCFS reported mother was receiving mental health services, including psychotherapy and medication management, and was participating in drug rehabilitation programs. Mother was living in a sober housing facility that did not allow children. Mother enrolled in a program to assist homeless individuals and attended a support group where she learned about anger management, parenting, social skills, and relapse prevention. Additionally mother completed an eight-week parenting course.

**5.**     *Section 388 Petition and Hearing*

On July 2, 2025, mother petitioned to change a court order. Mother requested the court place E.P. in her custody, or in the alternative, reinstate reunification services. Mother asserted she "has completed her case plan by attending AA classes, testing

---

[3] The record does not identify the nature of that disability.

negative for the department [*sic*] and completed parenting classes, and attending individual counseling."

Mother filed a declaration stating she completed an inpatient substance abuse program in November 2024 and completed an outpatient program in May 2025. Mother stated she had been sober since July 31, 2024. Mother claimed she had attended Alcoholics/Narcotics Anonymous classes "multiple times a week" and had a sponsor. Mother represented she attended weekly individual counseling sessions.

A counselor at mother's substance abuse program told a social worker that mother made positive changes and wants to be a good parent. Mother tested negative for controlled substances seven times from November 2024 through March 2025.

The social worker evaluating mother's section 388 petition concluded mother was addressing her substance abuse, but not her mental health issues. The social worker noted mother was placed on an involuntary hold in May 2024, was inconsistent with her individual therapy, failed to show up for psychiatry appointments, and stopped taking her psychotropic medications. DCFS recommended denying mother's section 388 petition.

On August 12, 2025, mother contacted a social worker and reported that she had relapsed and entered a residential substance abuse program. Mother said she reconnected with old friends and drank alcohol "and then kept drinking . . . ." Mother then used methamphetamine. After her positive test on August 12, 2025, mother tested negative for controlled substances five times between August 19, 2025 and September 16, 2025.

**6.** ***Hearing on Mother's Section 388 Petition***

On October 7, 2025, Mother testified at a hearing on her section 388 petition. Mother said she was 26 years old, and started using drugs when she was 17 years old. Initially, she used methamphetamine once a month but subsequently, her use became more frequent. Mother admitted she abused drugs. Mother admitted she could not properly care for E.P. when she was using drugs. Mother said she participated in Alcoholics Anonymous and Narcotics Anonymous meetings. Mother spoke to her sponsor every day.

Mother testified the last time she used drugs was August 11, 2025. Mother added that she sought treatment and was participating in an inpatient program at the time of the section 388 hearing. Mother represented that her longest period of sobriety was 11 months. Between the ages of 17 and 26, mother participated in eight substance abuse programs. Mother testified she still did not "know[ ] how to live sober," but she was "working towards it." Mother further testified she was "building [her] way to start [her] 12-steps" and was "not just . . . going to jump into [her] first step."

Mother stated she took nine parenting classes and participated in individual counseling for more than a year. Mother was learning "[h]ow to live in the moment as a parent and not look back at the past parent [she] used to be."

Mother said she was diagnosed with anxiety and depression. Mother admitted she stopped taking her prescribed medications. Mother explained she restarted her medication after the doctor prescribed a lower dose.

Mother testified E.P. could not live with her because there was no bed available at the facility where she was staying.

Mother still asked for E.P. to return to her care.  Mother acknowledged she had not cared for E.P. full time since August 2022.

Mother's counsel argued mother showed that she "can maintain sobriety."  Counsel contended mother's efforts to maintain her sobriety and her honesty concerning relapse shows that she "is a changed person."  Counsel asked for an additional six months of reunification services or allow E.P. to reside with mother when a bed became available.  E.P.'s attorney argued E.P. was 10 years old and would be happy to live with mother at her program.

DCFS's attorney argued mother's circumstances may be changing but were not changed.  "[W]hile mother does appear to be extremely well intentioned, mother still has a long way to go to change the circumstances that brought this case to the court's attention."  DCFS's counsel argued that mother also struggled to treat her mental health issues and stopped taking psychotropic medication when she relapsed.

7.      ***The Juvenile Court Denies Mother's Section 388 Petition***

On October 7, 2025, the juvenile court heard mother's section 388 petition.  The juvenile court first "touch[ed] on best interest" and stated based on the evidence before it at the hearing, that "mother and [E.P.] share a close, close bond."  The court noted that "adoption versus guardianship" was not before it, but the issue of changed circumstances was the subject of the hearing.  The court then weighed mother's almost nine years of substance abuse against her efforts to mitigate "that substance abuse problem."  The court noted mother had an 11-month "span of sobriety" but did "relapse" about two months before the

10

hearing. The court found there was insufficient evidence of changed circumstances. "At this time, the mother's circumstances are changing as she works her way through recovery." Although the court denied the section 388 petition because "not enough time has passed," it urged her "to keep working on [her] sobriety, keep attending [her] programs, . . . and keep testing." The court reiterated that mother should "[k]eep doing all . . . that you have been doing" and "[i]f we were at disposition six months from now, it could be really, really different . . . ."

Mother timely appealed.

## DISCUSSION

"Section 388 allows a parent to petition to change, modify, or set aside any previous juvenile court order. [Citation.] 'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances *and* (2) that the proposed modification would be in the best interests of the child.' [Citation.]" (*In re J.M.* (2020) 50 Cal.App.5th 833, 845; § 388, subd. (a).) We review the grant or denial of a section 388 petition for an abuse of discretion. (*In re Alayah J.* (2017) 9 Cal.App.5th 469, 478.)

Mother argues that the court abused its discretion in finding no changed circumstances since mother had 11 months of sobriety prior to her most recent relapse, confessed her relapse, entered an inpatient substance abuse program, and had been sober from August 2025 through October 7, 2025.

Mother admitted to using controlled substances for nine years. At the time of the hearing on mother's section 388 petition, mother had been sober for only two months. Despite participating in eight drug programs, mother continued to

11

struggle with methamphetamine abuse and acknowledged she was unable to care for E.P. while under the influence. Mother's relapse two months before the hearing on her section 388 petition supported the juvenile court's conclusion that despite her efforts, mother had not changed her circumstances of addiction that led to the dependency jurisdiction over E.P. (*In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 [no changed circumstances where the parent had "a history of drug relapses, is in the early stages of recovery, and [was] still addressing a chronic substance abuse problem"]; *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 424 [200 days of sobriety insufficient to show changed circumstances]; see also *In re Jayden M.* (2023) 93 Cal.App.5th 1261, 1277 [recent period sobriety "often not enough to counter a long-standing pattern of use and relapse"].)

Additionally, mother ignores the second basis for jurisdiction and identifies no changed circumstance with respect to her mental health. Most significantly, mother was placed on an involuntary hold in April or May 2024 due to a "grave disability." Mother also admitted she stopped taking her prescribed medication. On appeal, mother does not address her mental health issues and does not dispute respondent's argument that mother failed to show a meaningful change in her mental health status.

In sum, mother shows no abuse of discretion in the juvenile court's finding that mother had not changed her circumstances. Because mother has not shown changed circumstances, we need not consider mother's argument that a change in the court order would promote E.P.'s best interest.

## DISPOSITION

The juvenile court's order denying mother's Welfare and Institutions Code section 388 petition is affirmed.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.